ROTHENBERG & CAMPBELL
By: Howard A. Rothenberg, Esquire
345 Wyoming Avenue, Suite 210
Scranton, Pennsylvania 18503
Attorney I.D. #38440
Phone: (570)207-2889 || Fax: (570)207-3991
Email: hrlaw04@gmail.com

*Attorney for the Plaintiff,*
*Molly Schwartz, Individually and as*
*Administrator of the Estate of*
*David E. Dewald II*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MOLLY M. SCHWARTZ, Individually and as ADMINISTRATOR OF THE ESTATE OF DAVID E. DEWALD, II<br>629 Hillside Drive<br>Berwick, PA 18603<br><br>                                     Plaintiff<br><br>v.<br><br>LACKAWANNA COUNTY<br>123 Wyoming Avenue<br>Scranton, PA 18503<br>                              And<br><br>LACKAWANNA COUNTY PRISON BOARD<br>123 Wyoming Avenue<br>Scranton, PA 18503<br>                              And<br><br>LACKAWANNA COUNTY BOARD OF COMMISSIONERS<br>123 Wyoming Avenue<br>Scranton, PA 18503<br>                              And<br><br>CORRECTIONAL CARE INC.<br>4101 Birney Avenue<br>Moosic, PA 18507<br>                              And<br><br>EDWARD J. ZALOGA, D.O., *Individually And as President and Chief Medical Officer of Correctional Care Inc.*<br>4101 Birney Avenue<br>Moosic, PA 18507 | CIVIL ACTION – LAW<br><br><br>JURY TRIAL DEMANDED<br><br><br>NO.: _____ |

|  |  |
|---|---|
| | And |
| JOHN DOE I<br>1317 N. Washington Avenue<br>Scranton, PA 18509 | |
| | And |
| JOHN DOE II<br>1317 N. Washington Avenue<br>Scranton, PA 18509 | |
| | And |
| JOHN DOE III<br>1317 N. Washington Avenue<br>Scranton, PA 18509 | |
| | And |
| JOHN DOE IV<br>1317 N. Washington Avenue<br>Scranton, PA 18509 | |
| | And |
| JOHN DOE V<br>1317 N. Washington Avenue<br>Scranton, PA 18509 | |
| | And |
| JOHN DOE VI<br>1317 N. Washington Avenue<br>Scranton, PA 18509 | |
| | And |
| JOHN DOE VII<br>1317 N. Washington Avenue<br>Scranton, PA 18509 | |
| | Defendants |

## COMPLAINT[1]

AND NOW comes the Plaintiff, Molly M. Schwartz., individually and as Administrator of the Estate of David E. DeWald, II, by and through her counsel, Rothenberg & Campbell, and hereby files a Complaint against the Defendants in this matter and avers as follows:

### PRELIMINARY STATEMENT

1. This Section 1983 action is brought by Molly M. Schwartz ("Plaintiff"), daughter of decedent, David E. DeWald, II ("Mr. DeWald") and Administrator of the Estate of David E. DeWald, II seeking compensatory and punitive damages under 42 U.S.C. § 1983 and Pennsylvania law for the wrongful death of her father, Mr. DeWald, and related counts.

2. Specifically, on March 24, 2020, Mr. DeWald was incarcerated at the Lackawanna County Prison when correctional officers deployed a gaseous chemical into his cell and violently attempted to restrain and move him to the medical unit for observation. Horrifically, during their attempt to transport him to the medical unit, Mr. DeWald was physically attacked, beaten and assaulted by the correctional officers causing severe injuries to his person which ultimately resulted in his untimely death later that evening.

3. Plaintiff brings this Complaint under 42 U.S.C. § 1983, as to Mr. DeWald to redress the deprivation under color of Pennsylvania law of rights, privileges and immunities secured to Mr. DeWald by provisions of the Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution. Plaintiff alleges that Mr. DeWald was violently assaulted and later denied access to adequate and competent medical treatment, care and facilities, and that the Defendants were deliberately indifferent to his needs.

---

[1] Unless otherwise indicated, the factual allegations contained herein are based on video and documentary evidence obtained from Lackawanna County prior to filing this Complaint.

## PARTIES[2]

4. Plaintiff, Molly M. Schwartz, is an adult and competent individual domiciled in the Commonwealth of Pennsylvania with a principal residence at 629 Hillside Drive, Berwick, Pennsylvania 18603.

5. Plaintiff, Molly M. Schwartz brings this instant action in her own right and as the Administrator of the Estate of David E. DeWald, II, having been appointed by the Register of Wills of Lackawanna County on August 20, 2020 to No. 35-20-00783.

6. At all pertinent times, Mr. DeWald was an adult and competent individual domiciled in the Commonwealth of Pennsylvania and an inmate confined to the Lackawanna County Prison, located at 1317 N. Washington Avenue, Scranton, Pennsylvania 18509.

7. At all pertinent times, Mr. DeWald was incarcerated at the Lackawanna County Prison within the custody and control of the Defendants and their employees.

8. Defendant, Lackawanna County, is a municipality organized and existing under the laws of the Commonwealth of Pennsylvania, with the principal address at the Lackawanna County Government Center, 123 Wyoming Avenue, Scranton, Lackawanna County, Pennsylvania 18503.

9. At all pertinent times, Defendant, Lackawanna County owns, operates, manages, directs, creates policy for, and controls the Lackawanna County Prison (the "Prison").

10. Defendant, Lackawanna County Prison Board is a collection of individuals with the principal address at the County Government Center, 123 Wyoming Avenue, Scranton, Lackawanna County, Pennsylvania 18503 who, at all pertinent times, operates, manages, directs, creates policy for, and controls the Prison.

---

[2] Not all parties' names are known by Plaintiff. Plaintiff has identified John Does I – VII by their position within the Lackawanna County Prison and/or Correctional Care, Inc. as they have been identified in video evidence. Plaintiff will amend the pleadings as their full identities become known.

11. At all pertinent times, Defendant, Lackawanna County Prison Board, in their individual capacities, acted under the Color of Pennsylvania Law and pursuant to the custom, policy, and/or practice of Defendant, Lackawanna County. Defendant, Lackawanna County Prison Board are being sued in their individual, supervisory, policymaking, and all other official capacities as Board members.

12. Defendant, Lackawanna County Board of Commissioners, in their individual capacities, are elected Commissioners of Lackawanna County who regulated, managed, employed, and implemented the customs, policies, practices, and employees of the Prison at all times pertinent to this Complaint.

13. At all pertinent times, Defendant, Lackawanna County Board of Commissioners, in their individual capacities, acted under the Color of Pennsylvania Law and pursuant to the custom, policy, and/or practice of Defendant, Lackawanna County. Defendant, Lackawanna County Board of Commissioners are being sued in their individual, supervisory, policymaking, and all other official capacities as Commissioners.

14. Defendants Lackawanna County, Lackawanna County Board of Prisons and the Lackawanna County Board of Commissioners are heretofore referred to as the "County Defendants".

15. Defendant, Correctional Care, Inc. is believed to be a Pennsylvania corporation organized and incorporated in the Commonwealth of Pennsylvania with a principal place of business located at 4101 Birney Avenue, Moosic, Pennsylvania 18507. Plaintiff is asserting a professional liability claim against this Defendant.

16. At all pertinent times, Defendant Correctional Care, Inc. was contracted by County Defendants, to provide medical treatment to inmates at the Prison.

17.  Defendant, Edward Zaloga, M.D. ("Dr. Zaloga"), was at all times relevant hereto a licensed healthcare professional in the Commonwealth of Pennsylvania, practicing in the field of nephrology with an office located at 4101 Birney Avenue, Moosic, Pennsylvania 18507. Plaintiff is asserting a professional liability claim against this Defendant.

18.  At all times pertinent hereto, Dr. Zaloga was the President and Chief Medical Officer of Correctional Care, Inc.

19.  Individual Defendant, John Doe I, is believed to be an agent and/or employee of County Defendants whose identity is not yet known after having conducted a reasonable search with due diligence to determine the actual name, but whose designation is averred to be fictitious.  Individual Defendant John Doe I is believed to be a corrections officer employed by County Defendants, acting under Color of Pennsylvania Law and involved in the conduct herein described against Plaintiff and Mr. DeWald and is sued in his/her individual and official capacities.

20.  Individual Defendant, John Doe II, is believed to be an agent and/or employee of County Defendants whose identity is not yet known after having conducted a reasonable search with due diligence to determine the actual name, but whose designation is averred to be fictitious.  Individual Defendant John Doe II is believed to be a corrections officer employed by County Defendants, acting under Color of Pennsylvania Law and involved in the conduct herein described against Plaintiff and Mr. DeWald and is sued in his/her individual and official capacities.

21.  Individual Defendant, John Doe III, is believed to be an agent and/or employee of County Defendants whose identity is not yet known after having conducted a reasonable search with due diligence to determine the actual name, but whose designation is averred to be fictitious.  Individual Defendant John Doe III is believed to be a corrections officer

employed by County Defendants, acting under Color of Pennsylvania Law and involved in the conduct herein described against Plaintiff and Mr. DeWald and is sued in his/her individual and official capacities.

22. Individual Defendant, John Doe IV, is believed to be an agent and/or employee of County Defendants whose identity is not yet known after having conducted a reasonable search with due diligence to determine the actual name, but whose designation is averred to be fictitious. Individual Defendant John Doe IV is believed to be a corrections officer employed by County Defendants, acting under Color of Pennsylvania Law and involved in the conduct herein described against Plaintiff and Mr. DeWald and is sued in his/her individual and official capacities.

23. Individual Defendant, John Doe V, is believed to be an agent and/or employee of County Defendants whose identity is not yet known after having conducted a reasonable search with due diligence to determine the actual name, but whose designation is averred to be fictitious. Individual Defendant John Doe V is believed to be a corrections officer employed by County Defendants, acting under Color of Pennsylvania Law and involved in the conduct herein described against Plaintiff and Mr. DeWald and is sued in his/her individual and official capacities.

24. Individual Defendant, John Doe VI, is believed to be an agent and/or employee of Defendant Correctional Care, Inc. whose identity is not yet known after having conducted a reasonable search with due diligence to determine the actual name, but whose designation is averred to be fictitious. Individual Defendant John Doe VI is believed to be a nurse employed by either County Defendants, acting under Color of Pennsylvania Law and involved in the conduct herein described against Plaintiff and Mr. DeWald and is sued in his/her individual and official capacities or as an employee of Defendant Correctional Care, Inc.

25. Individual Defendant, John Doe VII, is believed to be an agent and/or employee of Defendant Correctional Care, Inc. whose identity is not yet known after having conducted a reasonable search with due diligence to determine the actual name, but whose designation is averred to be fictitious. Individual Defendant John Doe VII is believed to be a nurse employed by either County Defendants, acting under Color of Pennsylvania Law and involved in the conduct herein described against Plaintiff and Mr. DeWald and is sued in his/her individual and official capacities or as an employee of Defendant Correctional Care, Inc.

## JURISDICTION & VENUE

26. This court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this case raises federal questions under 42 U.S.C. § 1983 for violations of Mr. DeWald's Fifth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution, as well as supplemental jurisdiction under 28 U.S.C. Section 1367(a) to adjudicate State Law claims.

27. All of the actions complained of herein have taken place within the jurisdiction of the United States District Court for the Middle District of Pennsylvania. Venue is appropriate in this District pursuant to 28 U.S.C. Section 1391.

## OPERATIVE FACTS SUPPORTING LIABILITY

28. Plaintiff incorporates by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

29. Mr. DeWald was incarcerated at the Prison from 2017 until his untimely death on March 24, 2020.

30. On or about May 16, 2018, the Prison performed a health assessment on then-forty-two-year-old Mr. DeWald wherein he was found to be in good general health.

31. On or about March 24, 2020, Defendant corrections officers were called to Mr. DeWald's jail cell to move him for observation but Mr. DeWald refused to move.

32. After several repeated attempts to have Mr. DeWald cooperate, the corrections officers deployed a chemical into Mr. DeWald's jail cell.

33. After the deployment of the chemical, corrections officers entered Mr. DeWald's cell and, while Mr. DeWald was laying on the ground, physically attempt to restrain him and tasered him repeatedly.

34. Mr. DeWald pleaded with the corrections officers that the restraints on his hands were too tight and that the corrections officers were hurting him which included tasering him repeatedly.

35. After several minutes, corrections officers forcibly placed Mr. DeWald into a chair with all four (4) of his extremities restrained and dragged him into the hallway outside of his jail cell.

36. It is believed, and therefore averred, that during these several minutes inside his jail cell, Mr. DeWald was severely and violently beaten by the corrections officers during their attempts to restrain him along with being tasered several times.

37. Either while being dragged outside of his jail cell or upon being dragged outside of his jail cell, Mr. DeWald became unresponsive and unable to hold his head up independently; his face was covered in blood.

38. Mr. DeWald was then transported to a treatment area via a restraint chair.

39. Upon arrival at the treatment area, officers began to question out loud whether or not Mr. DeWald was breathing. One of the corrections officers called for a nurse.

9

40. When the first nurse arrived, she attempted to arouse Mr. DeWald verbally and was unsuccessful but made no attempt to assess Mr. DeWald, take his vital signs or perform a nursing assessment.

41. Noting that Mr. DeWald had an obvious head injury, the first nurse questioned the corrections officers if any of them had a flashlight (presumably to be used to check Mr. DeWald's pupillary responses).

42. The first nurse then asked the corrections officers for "that thing... what do you call it. It is in my bag." The corrections officers then asked if she meant the "pulse ox" and the nurse replied, "yeah, that's it."

43. From the video footage of the incident, it does not appear that Mr. DeWald's chest was rising and falling (an indication that he may not be breathing) during this period.

44. At that time, the first nurse is seen in the video cleansing Mr. DeWald's wounds instead of appropriately intervening for a possible respiratory arrest. The nurse failed to check Mr. DeWald's vital signs or administer oxygen or perform other life saving measures or even perform a nursing assessment.

45. Soon thereafter, a second nurse entered the treatment area and attempted both sternal stimulation and to obtain Mr. DeWald's blood pressure. The sternal stimulation was unsuccessful.

46. Eventually, one of the nurses placed an oxygen mask on Mr. DeWald, administered oxygen and placed a second pulse oximeter on Mr. DeWald.

47. Thereafter, the pulse oximeter alarm began to sound (indicating it could not detect either a pulse or oxygen level).

48. Thereafter, EMS providers arrived on the scene and Mr. DeWald was transported to the Geisinger Wyoming Valley Hospital.

49. Mr. DeWald arrived at Geisinger Wyoming Valley Hospital in sustained cardiopulmonary arrest with CPR being performed.

50. At 10:45 p.m. on March 24, 2020, Mr. DeWald was pronounced dead.

51. At no time did a nurse or corrections officer provide any report data to the EMS personnel nor were any of the nursing interventions provided to Mr. DeWald at the Prison documented in the medical records.

52. At no point in time was CPR attempted on Mr. DeWald by the Prison nurses or corrections officers.

53. Autopsy findings on Mr. DeWald included but were not limited to the following: (1) multiple abrasions and lacerations of the head, extremities and torso; (2) abrasion of both wrists and ankles consistent with decedent struggling against restraints; (3) abrasions of vertex of scalp and hematoma of forehead consistent with blunt impact; (5) abrasions of flanks consistent with taser induced lesions; (6) fractures of the 4th and 5th ribs; and (7) no intracerebral hemorrhage, tumor, or infarction. The autopsy listed "cardiac dysrhythmia secondary to physically struggling in hyperexcitable state" as the cause of death.

54. On March 24, 2020, Mr. DeWald died in the custody of the Prison, its agents, servants and/or employees.

55. No defendant intervened in any way to prevent or limit the use of unreasonable force or to provide life sustaining measures on Mr. DeWald who was experiencing cardiac dysrhythmia.

56. By their actions described above, Defendants, individually and/or jointly, caused the death of Mr. DeWald.

57. Employees of the Prison were present while defendant corrections officers were using force and causing the death of Mr. DeWald. None of the Prison employees intervened in any way, whether physically, verbally, by giving medical information or in any other way.

58. Employees of Defendant Correctional Care, Inc. and the Prison, by and through their respective agents, servants and/or employees, failed to properly administer CPR and life-saving medical procedures to render aid to Mr. DeWald in his final moments.

59. Upon information and belief, Defendant Correctional Care, Inc. and the Prison, by and through their respective agents, servants and/or employees, failed to properly train their medical staff on how to timely respond to medical emergencies.

60. Upon information and belief, Defendant Correctional Care, Inc. and the Prison, by and through their respective agents, servants and/or employees, failed to properly train their medical staff on how to handle a medical emergency when correctional officers are involved.

61. Upon information and belief, County Defendants and the Prison, by and through their respective agents, servants and/or employees, failed to adequately train their corrections staff to use only a constitutional amount of force, and no more force than is reasonably necessary in any given situation.

62. Upon information and belief, County Defendants and the Prison, by and through their respective agents, servants and/or employees, failed to discipline its corrections staff when they used unreasonable force, thus creating an atmosphere of "no negative consequences" upon the use of unreasonable force.

63. Upon information and belief, County Defendants and the Prison, by and through their respective agents, servants and/or employees, failed to adequately or properly discipline correctional officers who have a had a history of violence towards inmates.

64. Upon information and belief, County Defendants and the Prison, by and through their respective agents, servants and/or employees, failed to adequately or properly train their correctional officers on dealing with medical response situations.

65. Upon information and belief, County Defendants and the Prison, by and through their respective agents, servants and/or employees, failed to adequately or properly train correctional officers to timely respond to medical emergencies.

66. Upon information and belief, County Defendants and the Prison, by and through their respective agents, servants and/or employees, have chosen not to adequately or properly train correctional officers on chain of authority or delegating authority in emergency situations.

**COUNT I**
(42 U.S.C. § 1983)
Plaintiff v. County Defendants and John Does I – V

67. Plaintiff incorporates by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

68. Defendants' sustained use of force and failure to intervene while others were using force against Mr. DeWald constituted the use of unreasonable force.

69. Defendants' use of unreasonable force and failure to intervene to prevent or limit the use of unreasonable force under the Color of State Law violated Mr. DeWald's Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution.

70. As a result of Defendants' violations of Mr. DeWald's Constitutional rights, Mr. DeWald suffered severe physical injuries, conscious pain and suffering, psychological trauma and death.

71. As a result of the Defendants' actions, as described herein, by and through its agents, servants, and employees, Mr. DeWald suffered serious, permanent and debilitating damages and injuries and death.

WHEREFORE, Plaintiff respectfully request this Honorable Court award judgment in favor of the Plaintiff and against Defendants for compensatory damages, punitive damages, attorneys fees and any other relief this Honorable Court deems just.

COUNT II
(42 U.S.C. § 1983)
Plaintiff v. County Defendants

72. Plaintiff incorporates by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

73. County Defendants, either failed to develop, implement, approve and/or maintain customs, policies and/or practices and/or developed, implemented, approved, and/or maintained a number of deficient customs, policies, and/or practices with deliberate indifference, which proximately caused a deprivation of Mr. DeWald's Constitutional Rights.

74. County Defendants' failure to develop customs, policies and/or practices and/or their unconstitutional customs, policies and practices encouraged their employees, officers, and agents to believe that they could violate the Constitutional Rights of inmates, including Mr. DeWald, with impunity, without consequence, and with explicit or tacit approval.

75. The separate and/or conspired acts and/or omissions of County Defendants' made willfully, callously, recklessly, with gross negligence and/or with deliberate indifference, and made under the Color of State Law, proximately caused and/or facilitated the violations of Mr. DeWald's rights under the United States Constitution.

76. As a result of Defendants' violations of Mr. DeWald's Constitutional rights, Mr. DeWald suffered severe physical injuries, conscious pain and suffering, psychological trauma and death.

77. As a result of the Defendants' actions, as described herein, by and through its agents, servants, and employees, Mr. DeWald suffered serious, permanent and debilitating damages and injuries and death.

WHEREFORE, Plaintiff respectfully request this Honorable Court award judgment in favor of the Plaintiff and against the County Defendants for compensatory damages, punitive damages, attorneys fees and any other relief this Honorable Court deems just.

COUNT III
(Assault)
Plaintiff v. County Defendants and John Does I – V

78. Plaintiff incorporates by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

79. Defendants intended to put Mr. DeWald in reasonable and immediate apprehension of a harmful or offensive contact with his body.

80. As a result of Defendants' actions, Mr. DeWald was put in reasonable and immediate apprehension of such contact.

WHEREFORE, Plaintiff respectfully request this Honorable Court award judgment in favor of the Plaintiff and against the Defendants for compensatory damages, punitive damages, attorneys fees and any other relief this Honorable Court deems just.

COUNT IV
(Battery)
Plaintiff v. County Defendants and John Does I – V

81. Plaintiff incorporates by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

82. Defendants committed the acts described above with the intent to cause a harmful or offensive contact with Mr. DeWald's body and/or with the intent to place Mr. DeWald in reasonable and immediate apprehension of a harmful or offensive contact with his body.

83. Defendants' actions directly and indirectly resulted in a harmful and/or offensive contact with Mr. DeWald's body.

WHEREFORE, Plaintiff respectfully request this Honorable Court award judgment in favor of the Plaintiff and against the Defendants for compensatory damages, punitive damages, attorneys fees and any other relief this Honorable Court deems just.

## COUNT V
### (Intentional Infliction of Emotional Distress)
### Plaintiff v. County Defendants and John Does I – V

84. Plaintiff incorporates by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

85. Defendants, by their extreme and outrageous conduct as described above, intentionally and/or recklessly caused Mr. DeWald to suffer severe emotional distress and bodily harm.

WHEREFORE, Plaintiff respectfully request this Honorable Court award judgment in favor of the Plaintiff and against the Defendants for compensatory damages, punitive damages, attorneys fees and any other relief this Honorable Court deems just.

## COUNT VI
### (Negligence)
### Plaintiff v. County Defendants and Prison Employees (John Does I – V)

86. Plaintiff incorporates by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

16

87. The negligence, carelessness and/or recklessness of the Defendants, either individually and/or jointly, by and through their agents, servants, and/or employees consisted of the following:

    a.  Failure to properly supervise subordinates;

    b.  Failure to comply with federal and state statutes, laws, regulations, policies, practices and customs;

    c.  Failure to endeavor to maintain the health, safety and welfare of the inmates, like Mr. DeWald;

    d.  Failure to arrange for the creation, revision and publication of Prison rules, regulations policies and procedures;

    e.  Failing to properly monitor Mr. DeWald's vital signs;

    f.  In improperly monitoring Mr. DeWald's vital signs;

    g.  Exercising unreasonable physical force under the circumstances;

    h.  Failing to use reasonable physical force to restrain Mr. DeWald;

    i.  Violently attacking and beating Mr. DeWald;

    j.  Violating the policies, procedures, protocols, guidelines, bylaws and/or standards of the Prison maintained and operated by the County Defendants;

    k.  In failing to monitor Mr. DeWald's oxygen saturations;

    l.  Failure to refrain from any unnecessary, harmful, physical contact with Mr. DeWald and ensure that an appropriate level of restraint was exercised;

    m.  Failing to properly respond to Mr. DeWald's respiratory arrest;

    n.  Failing to respond to Mr. DeWald's emergency situation in a timely fashion;

    o.  Failing to commence immediate resuscitative measures when the Defendant knew, or should have known, that Mr. DeWald was in respiratory arrest;

    p.  Failing to commence immediate resuscitative measures when the Defendant knew, or should have known, that Mr. DeWald was in an emergency situation;

    q.  Failing to recognize that Mr. DeWald's condition was deteriorating; and

r.   In failing to exercise reasonable care under all of the existing circumstances.

88.  The negligence, carelessness and/or recklessness of the Defendants, either individually and/or jointly, by and through their agents and/or employees, as outlined above, was a proximate cause of the injuries sustained by Mr. DeWald as outlined herein.

89.  As a result of the negligence, carelessness and/or recklessness of the Defendants, either individually and/or jointly, by and through their agents and/or employees, as described herein, Mr. DeWald was physically assaulted, suffering severe, debilitating and permanent injuries which include, but are not limited to the following: multiple abrasions and lacerations of the head, extremities and torso; abrasion of both wrists and ankles; abrasions of vertex of scalp and hematoma of forehead consistent with blunt impact; abrasions of flanks consistent with taxer induced lesions; fractures of the 4th and 5th ribs and death, conscious pain and suffering and his ultimate death.

90.  The actions and inactions of each and all of the Defendants herein, as set forth in the proceeding paragraphs of this Complaint, amounted to deliberate indifference to the rights of Mr. DeWald, a conscious indifference to the consequences of their actions and outrageous and grossly indifferent conduct.

WHEREFORE, Plaintiff respectfully request this Honorable Court award judgment in favor of the Plaintiff and against the Defendants for compensatory damages, punitive damages, attorneys fees and any other relief this Honorable Court deems just.

**COUNT VII**
**(Negligence)**
**Plaintiff v. Correctional Care, Inc. and Nurses (John Does VI – VII)**

91.  Plaintiff incorporates by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

92. The negligence, carelessness and/or recklessness of the Defendants, either individually and/or jointly, by and through their agents, servants, and/or employees consisted of the following:

    a.  Failure to properly supervise subordinates;

    b.  Failure to comply with federal and state statutes, laws, regulations, policies, practices and customs;

    c.  Failing to properly monitor Mr. DeWald's vital signs;

    d.  In improperly monitoring Mr. DeWald's vital signs;

    e.  Failing to provide appropriate standard of care which requires the nursing staff at the Prison to act immediately and appropriately in the event of a medical emergency;

    f.  Failing to provide proper emergency care for a patient with a suspected head injury;

    g.  Violating the policies, procedures, protocols, guidelines, bylaws and/or standards of the Prison maintained and operated by the County Defendants;

    h.  In failing to monitor Mr. DeWald's oxygen saturations;

    i.  Failing to properly respond to Mr. DeWald's respiratory arrest;

    j.  Failing to respond to Mr. DeWald's emergency situation in a timely fashion;

    k.  Failing to commence immediate resuscitative measures when the Defendant knew, or should have known, that Mr. DeWald was in respiratory arrest;

    l.  Failing to commence immediate resuscitative measures when the Defendant knew, or should have known, that Mr. DeWald was in an emergency situation;

    m.  Failing to recognize that Mr. DeWald's condition was deteriorating;

    n.  Failing to properly staff the nursing care for the Prison and/or Correctional Care, Inc.;

    o.  Failing to adopt policies, procedures and/or policy and/or procedure manuals;

    p.  Failing to properly train its employees;

    q.  Failing to provide proper quality assurance methods and/or checks;

r. Failing to provide in-house seminars and/or other training to its staff;

s. Failing to conduct periodic reviews of its staff;

t. Failing to conduct adequate reviews of its staff;

u. Failure to obtain the proper certifications for providing health care and/or health services to jails including, but not limited to, The National Commission on Correctional Health Care Certification;

v. Failing to abide by, follow and/or comply with the standards, regulations and guidelines issued by the National Commission on Correctional Health Care Certification and other authorities;

w. Failing to comply with the requirements of the contract had with the Co-Defendants, Lackawanna County, Including but not limited to, failing to obtain National Commission on Correctional Health Care Certification;

x. In failing to have or establish proper and/or any policies, procedures, protocols, or guidelines for the care of inmates in the situation such as Mr. DeWald; and

y. In failing to exercise reasonable care under all of the existing circumstances.

93. The negligence, carelessness and/or recklessness of the Defendants, either individually and/or jointly, by and through their agents and/or employees, as outlined above, was a proximate cause of the injuries sustained by Mr. DeWald as outlined herein.

94. As a result of the negligence, carelessness and/or recklessness of the Defendants, either individually and/or jointly, by and through their agents and/or employees, as described herein, Mr. DeWald suffered severe, debilitating and permanent injuries which include, but are not limited to the following: multiple abrasions and lacerations of the head, extremities and torso; abrasion of both wrists and ankles; abrasions of vertex of scalp and hematoma of forehead consistent with blunt impact; abrasions of flanks consistent with taxer induced lesions; fractures of the 4th and 5th ribs, death and conscious pain and suffering.

95. The actions and inactions of each and all of the Defendants herein, as set forth in the proceeding paragraphs of this Complaint, amounted to deliberate indifference to the rights of

Mr. DeWald, a conscious indifference to the consequences of their actions and outrageous and grossly indifferent conduct.

WHEREFORE, Plaintiff respectfully request this Honorable Court award judgment in favor of the Plaintiff and against the Defendants for compensatory damages, punitive damages, attorneys fees and any other relief this Honorable Court deems just.

<u>COUNT VII</u>
(Negligence)
**Plaintiff v. Edward J. Zaloga, D.O., Individually and as President and Chief Medical Officer of Correctional Care, Inc.**

96. Plaintiff incorporates by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

97. The negligence, carelessness and/or recklessness of the Defendant, Edward J. Zaloga, D.O., either individually and/or jointly, by and through his agents, servants, and/or employees consisted of the following:

    a. Failure to properly supervise subordinates;

    b. Failure to comply with federal and state statutes, laws, regulations, policies, practices and customs;

    c. Failing to properly monitor Mr. DeWald's vital signs;

    d. In improperly monitoring Mr. DeWald's vital signs;

    e. Failing to provide appropriate standard of care which requires the nursing staff at the Prison to act immediately and appropriately in the event of a medical emergency;

    f. Failing to provide proper emergency care for a patient with a suspected head injury;

    g. Violating the policies, procedures, protocols, guidelines, bylaws and/or standards of the Prison maintained and operated by the County Defendants;

21

h.  In failing to monitor Mr. DeWald's oxygen saturations;

i.  Failing to properly respond to Mr. DeWald's respiratory arrest;

j.  Failing to respond to Mr. DeWald's emergency situation in a timely fashion;

k.  Failing to commence immediate resuscitative measures when the Defendant knew, or should have known, that Mr. DeWald was in respiratory arrest;

l.  Failing to commence immediate resuscitative measures when the Defendant knew, or should have known, that Mr. DeWald was in an emergency situation;

m.  Failing to recognize that Mr. DeWald's condition was deteriorating;

n.  Failing to properly staff the nursing care for the Prison and/or Correctional Care, Inc.;

o.  Failing to adopt policies, procedures and/or policy and/or procedure manuals;

p.  Failing to properly train his employees;

q.  Failing to provide proper quality assurance methods and/or checks;

r.  Failing to provide in-house seminars and/or other training to his staff;

s.  Failing to conduct periodic reviews of his staff;

t.  Failing to conduct adequate reviews of his staff;

u.  Failure to obtain the proper certifications for providing health care and/or health services to jails including, but not limited to, the National Commission on Correctional Health Care Certification;

v.  Failing to abide by, follow and/or comply with the standards, regulations and guidelines issued by the National Commission on Correctional Health Care Certification and other authorities;

w.  Failing to comply with the requirements of the contract had with the Co-Defendants, Lackawanna County, Including but not limited to, failing to obtain National Commission on Correctional Health Care Certification;

x.  In failing to have or establish proper and/or any policies, procedures, protocols, or guidelines for the care of inmates in the situation such as Mr. DeWald; and

y.  In failing to exercise reasonable care under all of the existing circumstances.

98. The negligence, carelessness and/or recklessness of the Defendant, both individually and as President and Chief Medical Officer of Correctional Care, Inc., by and through his agents and/or employees, as outlined above, was a proximate cause of the injuries sustained by Mr. DeWald as outlined herein.

99. As a result of the negligence, carelessness and/or recklessness of the Defendant, both individually and as President and Chief Medical Officer of Correctional Care, Inc., by and through his agents and/or employees, as described herein, Mr. DeWald suffered severe, debilitating and permanent injuries which include, but are not limited to the following: multiple abrasions and lacerations of the head, extremities and torso; abrasion of both wrists and ankles; abrasions of vertex of scalp and hematoma of forehead consistent with blunt impact; abrasions of flanks consistent with taxer induced lesions; fractures of the 4th and 5th ribs, death and conscious pain and suffering.

100. The actions and inactions of each and all of the Defendants herein, as set forth in the proceeding paragraphs of this Complaint, amounted to deliberate indifference to the rights of Mr. DeWald, a conscious indifference to the consequences of their actions and outrageous and grossly indifferent conduct.

WHEREFORE, Plaintiff respectfully request this Honorable Court award judgment in favor of the Plaintiff and against the Defendant for compensatory damages, punitive damages, attorneys fees and any other relief this Honorable Court deems just.

<u>COUNT VIII</u>
(Wrongful Death)
Plaintiff v. All Defendants

101. Plaintiff incorporates by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

102.     Mr. DeWald is survived by his daughter, the Plaintiff and she is entitled to recover damages resulting from his death pursuant to Pennsylvania Wrongful Death Act, 42 Pa.C.S.A. § 8301.

103.     By reason of the death of Mr. DeWald, his Estate has incurred damages for all hospital, medical, funeral, burial and estate administration expenses as well as the contributions Mr. DeWald would have made to the aforesaid survivors during his lifetime and for any and all other losses and damages allowed by law.

104.     Mr. DeWald did not institute any action during his lifetime for personal injuries.

WHEREFORE, Plaintiff respectfully request this Honorable Court award judgment in favor of the Plaintiff and against the Defendants for compensatory damages, punitive damages, attorneys fees and any other relief this Honorable Court deems just

## COUNT IX
### (SURVIVAL ACTION)
### Plaintiff v. All Defendants

105. Plaintiff incorporates by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

106.     Plaintiff also brings this action on behalf of the Estate of David E. DeWald, II pursuant to the Pennsylvania Survival Act 42 Pa. C.S.A. § 8302 and claims on behalf of the Estate all damages recoverable by law including, but not limited to, the physical pain and suffering Mr. DeWald endured prior to this death, the loss of earnings and earning capacity suffered by Mr. DeWald and the total limitation and deprivation of the activities, pursuits, and pleasures he would have experienced had he lived out the duration of this normal life expectancy.

24

WHEREFORE, Plaintiff respectfully request this Honorable Court award judgment in favor of the Plaintiff and against the Defendants for compensatory damages, punitive damages, attorneys fees and any other relief this Honorable Court deems just.

JURY TRIAL DEMANDED on all counts, facts and claims outlined herein.

### RELIEF REQUESTED

WHEREFORE, Plaintiff seeks monetary damages and reasonable attorneys fees and costs under Section 1983 and Pennsylvania law including the following:

1. Assume jurisdiction over this action;

2. Order appropriate monetary relief, and declare the Defendants to be in violation of Section 1983 and Pennsylvania law;

3. Order the Defendants to compensate Plaintiff for her reasonable attorneys fees and related costs;

4. Award compensatory damages to Plaintiff for Mr. DeWald's pain and suffering, death and past medical bills incurred as well as punitive damages;

5. Order a change in the policy, practice and customs regarding the Prison described herein; and

6. Grant such other relief as this Court deems proper.

[SIGNATURES ON NEXT PAGE]

Respectfully Submitted,

ROTHENBERG & CAMPBELL

Ryan F. Campbell, Esquire
Attorney I.D.: PA 317838


Howard A. Rothenberg, Esquire
Attorney I.D.: PA 81349
Rothenberg & Campbell
345 Wyoming Ave., Ste. 210
Scranton, PA 18503
p. 570.207.2889
f.  570.207.3991
HRLaw04@gmail.com

Attorneys for Plaintiff